UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 7825 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pamela Webb filed this action seeking reversal of the Commissioner's denial of her application for Supplemental Security Income under Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 1383(c). The parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 638(c). (Dkt. 7.) For the reasons set forth below, the Court grants Plaintiff's motion.

**I. Determining a Disability under the Act**

A claimant must show a disability under the Act in order to obtain disability insurance benefits. *York v. Massanari*, 155 F. Supp. 2d 973, 978 (N.D. Ill. 2001). To do so, a claimant must establish the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited June 1, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations provide a five-step, sequential inquiry to determine whether a claimant suffers from a disability: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether she has a severe impairment or combination of impairments; (3) if so, whether her impairment meets or equals any impairment enumerated in the regulations; (4) if not, whether she has the residual functional capacity to perform her past relevant work; and (5) if not, whether she can perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**II. Procedural History**

Plaintiff filed for disability benefits on March 13, 1993. Her application was denied initially, upon reconsideration, and again denied in a January 25, 2010 decision following a hearing by an Administrative Law Judge (hereinafter "ALJ") (R. 29). Plaintiff's request for review of the decision by the Appeals Council was denied on February 15, 2011, thus leaving the decision of the ALJ as the final decision of the Agency. (*Id*. 5.) On April 4, 2011 Plaintiff filed a complaint in the United States District Court for the Northern District of Illinois. (*Id*. at 813.) She was denied summary judgment on January 10, 2013 by United States Magistrate Judge Arlander Keys. (*Id*. at 752-811.) Plaintiff subsequently appealed to the United States Court of Appeals for the Seventh Circuit. (*Id*. at 816.) The Commissioner filed a motion for relief from judgment which was granted by the Court of Appeals on July 8, 2013. (*Id*. at 818.) The District

Court remanded Plaintiff's application to the Appeals Council; the Appeals Counsel remanded the matter to the ALJ. (*Id*. at 823.)

Plaintiff's application was denied, once again, by an ALJ on June 25, 2015.[2] (*Id*. at 597.) The ALJ found that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Applying the five-step analysis, the ALJ first determined that Plaintiff did not engage in substantial gainful activity from the application date to March 10, 2013. (*Id.* at 573.) At step two, the ALJ determined that Plaintiff's HIV, asthma, morbid obesity, hearing loss, and major depressive disorder were serve impairments. (*Id*. at 574.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I. (*Id*. at 587.) Next, the ALJ considered Plaintiff's residual functional capacity. The ALJ found that Plaintiff could lift and carry ten pounds both occasionally and frequently. (*Id*. at 589.) The ALJ also concluded that, among other things, Plaintiff could sit, stand, and walk for six out of eight hours, work without hand or arm limitations, engage foot controls frequently, engage in personal hygiene, take public transportation, and perform simple, routine tasks. (*Id*. at 589-90.). At step four, the ALJ found that Plaintiff did not have past relevant work. (*Id*. at 595.) At the final step, the ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, the national economy contained jobs in significant numbers that Plaintiff could perform. (*Id*.) In light of the

---

[2] Plaintiff alleged disability since March 13, 1993. The ALJ found that the relevant period at issue ended on March 10, 2013 because Plaintiff was found to be disabled as of March 11, 2013 based on a more recent application for supplemental security income. (*Id*. at 571.) Accordingly, we evaluate the evidence as it relates to the time period prior to March 11, 2013.

3

foregoing factors, the ALJ held that Plaintiff was not under a disability, as defined by the Act, from the application date to March 10, 2013. (*Id*. at 596.)

The Appeals Council declined Plaintiff's request for review of the ALJ's decision. (*Id*. at 1-6, 15). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

**III. Standard of Review**

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *See Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted). "In addition to relying on substantial evidence, the ALJ must also

explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (citation omitted).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

**IV. Discussion**

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erroneously rejected a treating psychiatrist's opinion; (2) miscalculated the percentage of the workday Plaintiff would have been off task and (3) improperly evaluated Plaintiff's credibility. (Pl's. Mem. at 9-12.) The Court agrees that the ALJ erroneously rejected a treating psychiatrist's opinion.

**A. Plaintiff's History of Depression**

At issue is whether the ALJ properly rejected treating psychiatrist Dr. Warikoo's assessment of Plaintiff's impairments caused by her depression. Plaintiff's long history

of depression began in 1989 after the birth of her first child. (R. at 540.) She first received treatment for her depression in 1991, after a failed suicide attempt by overdose. (*Id*.) She was hospitalized for a week and received medication. (*Id*.) More recently, the record reflects Plaintiff was diagnosed with major depressive disorder by Dr. Helen Radomska, consultative psychiatrist, and Dr. Villanueva, consultative physician, both of whom evaluated Plaintiff at in the request of the Administration in September of 2007. (*Id*. at 369, 373.) Dr. Radomska assed Plaintiff's Global Assessment of Functioning (hereinafter "GAF") score at 45. (*See* note 3, *infra*.) In the spring of 2008, Plaintiff reported symptoms of feeling depressed and tired during a physical examination. (R. 460.) In the fall of that same year, she sought treatment at the Englewood Mental Health Center three times. (*Id*. at 493.) Her psychologist, John Carlsen, diagnosed Plaintiff with major depressive order. (*Id*. at 495.) His notes from the appointments indicate that Plaintiff's symptoms included, sadness, excessive guilt, anxiety, extreme irritably, racing thoughts, loss of interest, not wanting to live, changes in appetite, and changes in sleep. (*Id*. at 499.) Plaintiff reported feeling upset about her son's incarceration and stressed from losing two brothers with whom she was emotionally close. (*Id*. at 495, 496.) The psychologist assessed Plaintiff's GAF Score[3] at 50[4] (*Id*. at 495.) He noted that Plaintiff

---

[3] The GAF scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning . . . The GAF scale is divided into 10 ranges of functioning . . . [T]he first part of the range 41-50 describes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" and the second part includes "any serious impairment in social occupational or school functioning (e.g., no friends unable to keep a job)."
Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 32 (Am. Psychiatric Assoc., 4th Ed. 2000) (hereinafter "Metal Disorders 4th Ed.).

[4] A GAF score in the 41-50 range constitutes "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting OR any serious impairment in social, occupational, or school functioning (e.g., friends, unable to keep a job.)"
*Id*. at 34.

had difficulty with attention, concentration, processing information, memory, and orientation problems in time, and place. (*Id*. at 499.)

In January of 2009, Plaintiff saw treating psychiatrist Dr. Ruth Rosenthal. Dr. Rosenthal noticed that Plaintiff's grooming and hygiene were "good" but her mood was "sad and irritable" and her affect was "flat." (*Id*.at 541.) She also found that Plaintiff did not have suicidal ideation. (*Id*.) At the conclusion of her evaluation, Dr. Rosenthal found that the Plaintiff did not have major depressive disorder but instead had dysthymic disorder. Dysthymia, or persistent depressive disorder, like major depressive disorder, falls under the category of depressive disorders. Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 155 (Am. Psychiatric Assoc., 5th Ed. 2000). Persistent depressive disorder is a "more chronic form of depression [than major depressive disorder. . . It] can be diagnosed when the mood disturbances continue for at least 2 years in adults." *Id*. Based on her diagnoses, Dr. Rosenthal prescribed Plaintiff 60mg of Cymbalta[5] in addition to the 100mg of Zoloft[6] Plaintiff already took daily for three years.[7] (*Id*. at 541.) In March, Dr. Rosenthal switched Plaintiff's medication to Lexapro[8] after Plaintiff experienced nosebleed and sedation side effects from Cymbalta.

---

[5] Cymbalta (duloxetine) is a selective serotonin and norepinephrine reuptake inhibitor antidepressant (SSNRI). The way duloxetine works is still not fully understood. It is thought to positively affect communication between nerve cells in the central nervous system and/or restore chemical balance in the brain. Cymbalta is used to treat major depressive disorder in adults. Drugs.com, *Cymbalta*, available at https://www.drugs.com/cymbalta.html (last visited Sept. 20, 2017).

[6] Zoloft (sertraline) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs) . . . Zoloft is used to treat depression, obsessive-compulsive disorder, panic disorder, anxiety disorders, post-traumatic stress disorder (PTSD), and premenstrual dysphoric disorder (PMDD).
Drugs.com, *Zoloft*, https://www.drugs.com/zoloft.html (last visited Sept. 20, 2017).

[7] According to Dr. Rosenthal's notes, Dr. Glick, Plaintiff's primary care physician had prescribed Plaintiff 100mg of Zoloft daily.

[8] "Lexapro (escitalopram) is an antidepressant belonging to a group of drugs called selective serotonin reuptake inhibitors (SSRIs)." Drugs.com, *Lexapro*, https://www.drugs.com/lexapro.html (last visited Sept. 20, 2017).

(*Id*. at 542.) Dr. Rosenthal noted Plaintiff complained of depression, problems with mood, low motivation and interest, and not wanting to go out. (*Id*. at 542.)

During the summer of 2009 Plaintiff saw treating psychiatrist Dr. Warikoo on two occasions. Dr. Warikoo noted that Plaintiff was able to smile and laugh during the appointment and that she was losing weight. (*Id*. at 550.) Although Plaintiff noted her mood was improving, she rated it a 4/10 (0 being the worst and 10 the best.) (*Id*.) She also reported decreased energy and motivation. (*Id*.) Dr. Warikoo assessed Plaintiff's GAF score at 55,[9] and increased her dosage of antidepressant medication, and prescribed her additional medication. (*Id*.) Dr. Warikoo treated plaintiff every four to six weeks until at least 2012. (*Id*. at 983.)

In 2013, Dr. Fine, a consultative psychiatrist, evaluated Plaintiff at the request of the Administration. (*Id*. at 1157.) During the examination, Plaintiff reported that her mood is sad, her energy is "none," and that she has no desire to get up or go anywhere. (*Id*. at 1157.) Dr. Fine concluded that Plaintiff's mood is depressed, she has some time and place disorientation, possesses immediate and recent memory deficit, has a poor fund of information, and has problems calculating and abstracting. (*Id*. at 1160.) Dr. Fine diagnosed Plaintiff with major depression. (*Id*.)

At Plaintiff's hearing she testified that her symptoms of depression included crying spells, not wanting to be bothered, not wanting to be around people, wanting to be alone, suicide, not wanting to live, and feeling worthless. (R. 622.) She testified that she

---

[9] A GAF score in the 51-60 range constitutes "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social functioning, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Mental Disorders 4th Ed, *supra* note, 5 at 34.

began to see Dr. Warikoo for medicine management and counseling. (*Id*. at 627.) She stated that she felt that her depression was worsening and she was having trouble sleeping. (*Id*.)

**B. Dr. Warikoo's Assessment**

Plaintiff argues that the ALJ erroneously afforded "little weight" to Dr. Warikoo's opinion. (Pl's. Mem. at 8.) In July of 2009, after assessing the Plaintiff, Dr. Warikoo opined that, among other things, Plaintiff had marked restriction of activities of daily living, extreme difficulties maintaining social functioning, and frequent deficiencies of concentration. (R. 532.) When rating Plaintiff's mental abilities and aptitude required to perform unskilled work on scale of unlimited/very good, good, fair, poor, Dr. Warikoo rated among other things, Plaintiff's capability of understanding and remembering very short and simple instructions, maintaining attention for a two-hour segment, maintaining regular attendance, completing a normal workday and work week, performing at a consistent pace, getting along with coworkers, and responding appropriately to changes in routine as poor. (*Id*.) Dr. Warikoo rated the following capabilities of Plaintiff as fair: ability to understand, remember, and carry-out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work related decisions; ask simple questions or request assistances; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. (*Id*.) She concluded Plaintiff has frequent deficiencies of concentration and that Plaintiff's depression would cause her to be absent more than three times a month.

The ALJ offered slight weight to Dr. Warikoo's assessment. The proffered reason given by the ALJ was inconsistencies within Dr. Warikoo's progress notes:

> A treating mental health provider, J. Warikoo, M.D., opined in July of 2009 that the claimant's depression caused marked restriction of activities of daily living; extreme difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, and pace resulting in failure to complete tasks timely; and one or two episodes of decompensation. She also opined that the claimant would likely be absent from work three or more times per month. (Exhibit 21F.) After reviewing the entire record, I ascribe only slight weight to Dr. Warikoo's opinion because her objective observations of the claimant recorded in her treatment notes sharply contradict the limitations she posited. At the two documented visits in July and August of 2009, Dr. Warikoo found the claimant on mental health status examination with an affect that was constricted yet stable; she noted the claimant was "able to smile and laugh" and she found the claimant's mood "improving." She also found the claimant's thoughts to be coherent, free of any evidence of thought disorder and she found no perceptual disturbances or suicidal ideation. (Exhibit 22F/18, 21.) Additionally, while Dr. Warikoo indicated the claimant had been receiving monthly treatment since January of 2009, (Exhibit 21F/1), she only saw the claimant for the first time on July 17, 2009, the same day on which she completed the opinion form. The other months a different psychiatrist saw the claimant. (See Exhibit 22F/10,12,14,18.)

(*Id*. at 585.)

We find that the ALJ erred in assessing Dr. Warikoo's opinion. "[I]n determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). In general, a treating physician is better positioned to evaluate a claimant's limitations than a non-treating source. *Nazifi v. Colvin*, No. 13 C 5728, 2015 WL 859600, at *3 (N.D. Ill. Feb. 26, 2015). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). If the treating physician's opinion "is well supported and there is no contradictory evidence,

there is no basis on which the administrative judge, who is not a physician, could refuse to accept it." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citation omitted). "Thus, to the extent a treating physician's opinion is consistent with the relevant treatment notes and the claimant's testimony, it should form the basis for the ALJ's determination." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted).

An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Id*. at 1101; 20 C.F.R. § 404.1527(c)(2). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). The ALJ must "consider certain factors in order to decide how much weight to give [a treater's] opinion." *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014) (1). These factors include:

> (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Id*. (quoting 20 C.F.R. § 404.1527(c)(2)-(5)).

The ALJ properly notes that Dr. Warikoo only saw Webb one time prior to writing her opinion. "When the treating relationship consists only of a one-time evaluation, the claimant must demonstrate why the one-time evaluation gives the treating physician special insight into the claimant's medical condition." *Kirby v. Colvin*, 2014 U.S. Dist. LEXIS 138163, at *15-16 (S.D. Ind. Sept. 30, 2014) (citing 20 C.F.R. §

11

404.1527(c)(2)(i)). Otherwise, "the presumption of favoring a treating physician's opinion over a non-treating physician's opinion loses its force." *Id.*

Plaintiff offers several persuasive reasons why Dr. Warikoo had insight into Plaintiff's conditions based off a one-time evaluation. First, Dr. Warikoo is a treating psychiatrist meaning she has "received special education and training in the treatment and diagnoses of mental impairments." (Pl. Reply at 2.) Thus Dr. Warikoo's assessment of Plaintiff's depression should be afforded heightened weight. *See* 20 C.F.R. § 404.1527(c)(5) (Generally, an ALJ should give "more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." ) Second, Dr. Warikoo's assessment of Plaintiff was generally consistent with the review of various other medical providers all of whom had also examined plaintiff including Dr. Radomska (psychiatrist), Dr. Fine (psychiatrist), and Dr. Friedson (psychologist). The ALJ failed to assess the input of this consistency in his assessment. *See* 20 C.F.R. §416.926(c)(4).

Third, the ALJ afforded great weight to the opinion of Dr. Rosenfeld, a psychologist who neither treated nor examined Plaintiff. In discounting Dr. Warikoo's opinion, ALJ relies heavily on the opinion of Dr. Rosenfeld whose findings are largely incongruous with Dr. Warikoo's. (*See* R. 587 ) Yet the ALJ does not offer a single citation to the record throughout his discussion of Dr. Rozenfeld's assessment. The ALJ argues that Dr. Rozenfeld's opinion should be given great weight because among other things, "she had the benefit of reviewing the longitudinal record [,] . . . she observed the claimant and heard her testify[,] . . . and is an experienced practitioner and an experienced forensic doctor in Social Security disability cases." (*Id.*) Likewise, Dr.

Warikoo had the ability to observe Plaintiff during the course of her treatment with Plaintiff and she is an experienced practitioner that specializes in the area of Plaintiff's illness. Thus the ALJ's explanation as to why he gave a non-treating psychologist's opinion more weight than a treater is lacking. Fourth, the ALJ found Dr. Warikoo's statement that Plaintiff had had monthly treatment since January of 2009 inconsistent because she only saw the claimant for the first time in July. (R. 585.) However, a careful review of the record shows that Plaintiff first visited Mount Sinai Hospital Medical Center in January 2009 and received monthly treatment by different doctors at the center until her initial meeting with Dr. Warikoo. (*Id*. at 533.)

If the foregoing is insufficient to tip the scale in Plaintiff's favor, the ALJ's fundamental misunderstanding of depression certainly does. The ALJ found that Dr. Warikoo's assessment that Plaintiff had coherent thoughts, her mood was improving, and that she was able to smile and laugh was in sharp contradiction to her previously listed symptoms of depression. However, the ALJ failed to provide any reasoning as to how the aforementioned observations alone would obviate the restrictions of depression. Significantly, the *only* reason offered by the ALJ to justify "ascrib[ing] only slight weight to Dr. Warikoo's opinion" is because Dr. Warikoo's "objective observations of the [Plaintiff] recorded in [Dr. Warikoo's] treatment notes sharply contradict the limitations [Dr. Warikoo] posited." (R. 585.) The ALJ's misinformed clinical and medical understanding of depression is the same body of knowledge applied in concluding that Dr. Warikoo's opinion is "sharply contradicted" by her objective observations. The belief that Plaintiff's ability to smile and laugh during a medical examination is inconsistent

with a diagnosis of depression[10] is not only misinformed but has no relation to the restrictions contemplated by Dr. Warikoo. (*See* R. 585 "Warikoo, M.D., opined in July of 2009 that the claimant's depression caused marked restriction of activities of daily living; extreme difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, and pace resulting in failure to complete tasks timely; and one or two episodes of decompensation.")

While the Court only possesses a lay understanding of depression, the absence of suicidal ideation, smiling during a doctor's appointment, and mood improvement as a result taking anti-depressants (the reason why doctors prescribe anti-depressants in the first place) cannot be the basis of discrediting a professional's diagnosis of depression and its purported limitations. The ALJ may not surmise characteristics he believes contradict a diagnosis of depression to discredit an opinion of a treating psychologist. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.") Nor may he rely on improvements when the improvement is not great enough to eliminate the disability. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("[O]ne's medical condition could improve drastically, but still be incapable of performing light work. The key is not whether one has improved

---

[10] Depression can impact one's thoughts, feelings, and behaviors "and can lead to a variety of emotional and physical problems." Diseases and Conditions, Depression (major depressive disorder) Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/depression/basics/definition/con-20032977 (last visited April 3, 2017). A person suffering from depression may experience difficulty carrying out normal day-to-day activities and at times may feel life is not worth living. *Id*. While many people who are depressed experience sadness, "[s]adness is only a small part of depression. Some people with depression may not feel sadness at all." National Institute of Mental Health, *Depression: What You Need to Know*, https://www.nimh.nih.gov/health/publications/depression-what-you-need-to-know/depression-what-you-need-to-know-pdf_151827.pdf (last visited May 30, 2017.) Depression manifests in different ways and the severity and frequency varies depending on the individual. *Id.*

(although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.") Finally, Dr. Warikoo's diagnosis of depression is consistent with the medical record. *See* Part A, *supra*. Because the ALJ offers no other support for his inexplicable contention discounting a treating physician's assessment as to the Plaintiff's limitations, the ALJ's conclusion cannot stand.[11]

## Conclusion

The Court finds that the ALJ improperly weighed Dr. Warikoo's opinion by failing to offer a sufficient explanation why her opinion should be given slight weight. Because the Court finds the ALJ's opinion deficient on this basis alone, the Court grants the Plaintiff's motion, reverses the Commissioner's decision, and remands this case for a reevaluation of Dr. Warikoo's opinion and a reassessment of other issues that are informed by that evidence.

SO ORDERED.                                           ENTERED: September 20, 2017

*M. David Weisman*

———————————————

M. David Weisman

United States Magistrate Judge

---

[11] The ALJ does note that Dr. Warikoo's assessment of Plaintiff occurred on her first examination with Plaintiff. (R.585.) But the ALJ does not explain at all how Dr. Warikoo's singular examination is less reliable than Dr. Rosenfield, a psychologist who neither treated nor examined Plaintiff. (*See* Pl. Reply at 3.) *See also Aurand v. Colvin*, 654 Fed. Appx. 831, 837 (2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer.").